322 So.2d 265 (1975)
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Olive J. DeJEAN, Defendant-Appellee.
No. 12711.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
*266 D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Robert L. LeDoux, Johnie E. Branch, Jr., Baton Rouge, Jack C. Fruge, Sr., Ville Platte, for plaintiff-appellant.
Holloway, Baker, Culpepper & Brunson by William H. Baker, Herman A. Castete, Bobby L. Culpepper, Jonesboro, for defendant-appellee.
Before PRICE, DENNIS and MARVIN, JJ.
PRICE, Judge.
This appeal arises out of the expropriation of property by the State of Louisiana through the Department of Highways in connection with the widening of Louisiana Highway 167 in Jackson Parish. At the time of the taking the defendant, Olive DeJean, owned a 103 acre tract of unimproved land on the west side of Highway 167 in the area where the corporate limits of the Town of Hodge connect with the north boundary of Jonesboro. The expropriation took a strip along the entire frontage of the property on Highway 167 measuring 1861.54 feet for a depth of 40.05 feet and containing 1.579 acres. In addition a drainage servitude was expropriated through defendant's property which runs perpendicular to the highway and contains 3.724 acres.
The sum of $5,648 was deposited by the Department of Highways as the estimated just compensation for the property taken from defendant, including the drainage servitude.
The matters raised by defendant in answer to the petition for expropriation which were placed at issue on trial in the district court were the adequacy of the amount estimated as just compensation and severance damages to the remainder of defendant's property caused by the taking.
The trial judge awarded defendant the total sum of $59,437 as just compensation for the property taken and rejected defendant's claim for severance damages. The court found defendant entitled to the following fees for expert witnesses which were taxed as costs.

H. L. Bass $1,800.00
O. L. Jordan $1,950.00
Darrel V. Willet $2,450.00
Hab Monsur $2,225.00
Lavelle Nunn $464.20
W. Dare Gueydan $899.40

In appealing from this judgment the Department of Highways contends the trial judge committed manifest error in determining the fair market value of the property taken and in awarding an unreasonable amount for the fees of the expert witnesses engaged by defendant. By answer to the appeal defendant asks that the award for just compensation be increased to allow her the value of timber removed from the property affected by the taking and an additional sum for the fair market value of a quantity of dirt to be removed from the servitude area in the proposed construction of a drainage ditch by the Department of Highways. No issue is made on appeal in regard to the trial court's failure to award severance damages.
Defendant also filed a motion to dismiss plaintiff's appeal based on the following allegations:
1. That the State through the Department of Highways has failed to deposit the excess amount awarded by the trial court prior to the taking of the appeal.
2. That the petition to appeal alleges no right or authority on the part of the council who signed the petition to take or effect an appeal on behalf of the State through the Department of Highways.
A motion to dismiss for identical reasons as advanced herein was filed in State of Louisiana, through Department of Highways v. Whitman, 313 So.2d 918 (La.App. *267 2nd Cir. 1975), and State of Louisiana through Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App. 2nd Cir. 1975) recently decided by this court. For the reasons given in those decisions the motion to dismiss is overruled.

JUST COMPENSATION FOR PROPERTY TAKEN
Other than the issue of witness fees the sole complaint of the state is in regard to the amount awarded for the property taken in fee which is the 1.579 acre strip across the frontage of defendant's property on Highway 167.
Testifying for the State as expert real estate appraisers were L. J. Roy and Dan Carlock, both of Baton Rouge. They initially appraised the subject strip of defendant's property on an acreage basis in proportion to the value of the total tract of 103 acres, which is called the "average land theory." Using this approach Roy found the subject tract taken to have a value of $3,553 and Carlock estimated the value to be $4,737. They also prepared an alternate appraisal at the instruction of the State, using a front land-rear land method and under this theory Roy found the tract to have a value of $22,643 and Carlock estimated the value at $29,455.
In developing their appraisal on the front land-rear land approach, each assumed that the highest and best use of the front portion of the property to a depth of 210 feet was for commercial development. They calculated the fair market value per front foot basis to obtain the value of the hypothetical tract and related this value to the area actually taken. Based on comparable sales in the vicinity of commercial property Roy estimated the tract to have a unit value of $1.00 per square foot if it were at grade level with the highway. As he found the property to be approximately five feet below grade, he estimated the cost of necessary fill at fifty cents per square foot and subtracted this cost from the $1.00 per square foot. Additionally, he discounted the remaining fifty cents by eight percent to compensate for the extimated period of time he calculated it would require to market such an extensive amount of frontage in the Jonesboro area. Accordingly he arrived at a present market value of 33.55 cents per square foot for the unit price of the 68,781.24 square feet in the 1.579 acre tract being taken in fee. Using basically the same procedure and making similar deductions for dirt fill and a time for marketing depreciating factor, Carlock arrived at a net value of forty-five cents per square foot for this property.
Testifying for defendant on the question of market value were Darrel V. Willet, Hab Monsur and Herman Bass. Willet and Monsur are real estate appraisers, brokers and developers residing in Alexandria. Bass, who possesses similar qualifications is from Jonesboro. In addition to the foregoing testimony it was stipulated that O. L. Jordan, a real estate appraiser from Shreveport, had appraised the property and would testify substantially the same as Bass.
These witnesses used the front land-rear land approach to arrive at a market value of the property taken in fee. They used basically the same comparables in their market data evaluation but varying judgment factors to relate the selected comparables to the subject property. The estimates of fair market value of these witnesses ranged from a low of 64.4 cents per square foot to 89 cents per square foot for the property taken in fee.
The trial judge in his written reasons for judgment found the front tract being expropriated in fee to have a fair market value of 73 cents per square foot, or total value of $49,422.00. He found the testimony of defendant's experts to more accurately reflect the true market value of the *268 property than the estimates of plaintiff's appraisers, Roy and Carlock.
The principal complaint of the State on this issue of this appeal is that the trial judge gave more credence to the defendant's appraisers opinions of the fair market value, although their testimony did not allow for the cost of a five foot fill to bring the property to road grade. The State also contends these appraisers' opinions are not as well grounded as they did not see fit to depreciate their estimates of market value to compensate for the number of years it will require to market such an extensive number of commercial sites in this area.
We do not find the evidence to show any abuse of discretion by the trial judge in giving more weight to defendant's appraisers in his finding of market value.
The testimony of defendant's appraisers does reflect that a reduction in the estimate of fair market value was made because the property was below road grade. The State contends these appraisals calculated the fill at 3½ rather than the 5 foot deemed necessary by its appraisers, and, therefore, the court should not have accepted them without further revision to compensate for this factor. As we understand the testimony of defendant's experts, their reference to a 3½ foot fill was after compaction of the fill dirt, and that this amount of fill on the front portion with a gradual decline to the rear for drainage is sufficient to bring the subject property in line with other commercial tracts in the immediate vicinity.
The State's appraisers' conclusion that a reduction in present market value should be made to allow for a period of ten years to market the estimated number of commercial sites is based on their judgment of the economic vitality of the Jonesboro-Hodge community. Defendant's appraisers were unanimous in their conclusion that there was a scarcity of commercial property available in this proximity and that the economy in the Jonesboro area was very strong. They further testified that general appreciation in property values would more than offset any consideration of a time period required to market this amount of commercial property. The record shows that defendant's appraisers were as a whole more familiar with the economic conditions and the demand for commercial sites in the Jonesboro area and, in view of this factor, we are of the opinion their testimony is more reliable in this regard than the State's appraisers who resided in Baton Rouge.

DEFENDANT'S CLAIM FOR VALUE OF TIMBER REMOVED
Defendant presented the testimony of Dare Gueydan, a forester, to prove the amount and market value of timber existing on the tract taken in fee and the tract on which the drainage servitude was expropriated. We find no error in the refusal of the trial judge to make a separate award for the value of timber over and above the fair market value of the property on which the timber was situated. In State of Louisiana, through Department of Highways v. Hart, 249 So.2d 310 (La.App. 1st Cir. 1971), the court discussed the consideration of growing timber as a factor in estimating just compensation as follows:
"The income producing value of growing trees, their usefulness or worth as shade trees, or their aesthetic or ornamental value, may be considered in determining the value of the land on which they are situated. If, however, trees are not nursery stock which can be dug and sold in the nature of a crop, they cannot be considered a growing crop, and no award can be made for their value separate and apart from the value of the land itself. State Through Department of Highways v. Black et al., La.App., 207 So.2d 583; State Through Department of Highways v. Matise et al., La. App., 170 So.2d 709. The timber in question had no value as a `special crop' or `growing crop'. Its value, therefore, *269 may be considered only in determining the value of the land according to its best and highest use."
We find no distinction in the subject case to exempt it from the rule of law as stated above.

DEFENDANT'S CLAIM FOR MARKET VALUE OF ESTIMATED QUANTITY OF DIRT TO BE REMOVED FROM SERVITUDE AREA
Defendant contends that the award made by the trial judge as just compensation for the 3.74 acres comprising the drainage servitude expropriated of $2,015.00, or 1½ cents per square foot, is inadequate in view of the amount and value of dirt the Department of Highways intends to remove to construct a drainage canal. The pleadings of the Department of Highways do not reflect the nature and extent of any excavating to be performed in furtherance of the servitude of drain. The only evidence in the record relating to removal of dirt comes from defendant's appraisers who testified they obtained such information from the Department of Highways engineers.
Monsur and Bass testified that in accord with the information obtained by them a quantity of dirt would be removed having a market value of $15,675. Defendant contends she is entitled to this amount over and above the amount awarded for the servitude right.
Assuming that defendant has established with sufficient certainty that the drainage canal is to be constructed in accord with her witnesses' testimony, there is no evidence in the record showing what disposition is intended to be made of the dirt to be excavated. It would be supposition on our part to assume the State intends to use the dirt in the construction project or to market the dirt rather than to spread it on the property of defendant within the servitude area adjacent to the canal.
On the basis of the record as presently constituted we find no error in the trial judge's failure to award defendant this item of damage claimed by defendant.

EXPERT WITNESS FEES
The thrust of the State's contention on this appeal that the trial court's assessment of expert witness fees was manifestly erroneous is the assertion that the court awarded defendant the amount she was charged by each expert without any proof being offered to support the reasonableness of the charges.
This court has considered the same issue in recent cases involving this same highway project and has reviewed the principles of law pertinent to the awarding of expert witness fees and the reasonableness thereof. State of Louisiana, through Department of Highways v. United Pentecostal Church of Hodge, supra; State of Louisiana, through Department of Highways v. Whitman, supra, and State of Louisiana, through Department of Highways v. Bounds, 319 So.2d 549 (La.App. 2nd Cir. 1975). All of the witnesses who testified in this case, except W. Dare Gueydan, testified for the land owners in the foregoing cases in which we found the awards made by the trial court excessive and reduced the fees to a reasonable sum.
We do not find any significant difference in the instant case from the prior cases mentioned to justify a departure from the amounts found to be reasonable in those cases.
We therefore fix the fees of defendant's expert witnesses as follows:

H. L. Bass $650.00
O. L. Jordan $650.00
Darrel V. Willet $650.00
Hab Monsur $650.00
W. Dare Gueydan $275.00

The fee of Lavelle Nunn is disallowed as there is no authority for taxing *270 the costs of photographs against the expropriating authority. State, through Department of Highways v. United Pentecostal Church of Hodge, supra.
For the foregoing reasons the judgment appealed from is amended to fix the fees of expert witnesses as set forth above, and as amended is affirmed.
DENNIS, J., concurs with written reasons.
DENNIS, Judge (concurring):
I agree that the trial court's award for expert witness fees was excessive. Although I would have fixed the fees in higher amounts, I find that those set by the majority are within the ambit of this court's discretion. Therefore, I concur in the majority opinion.