DOMENGEAUX, Judge.
The State of Louisiana, through the Department of Highways, expropriated for highway purposes a portion of a tract of land owned by the defendants.[1] Pursuant to the -requirements of La.-R.S. 48:441, et seq., the Department of Highways deposited the sum of $45,198.00 as just compensation for the property taken. The defendants answered claiming compensation of $71,953.75 for the property taken. The trial court rendered judgment in favor of the defendants awarding a total of $69,326.50 subject to a credit for the funds previously deposited. This award consisted of $24,-721.00 for the land taken, $34,300.00 for the improvements taken, $9,124.00 for severance damages, and $1,180.50 as an expert witness fee for defendants’ appraiser. Plaintiff appealed.
Four issues are presented by this appeal: (1) the value of the land taken, (2) the value of the improvements taken, (3) the amount of severance damages, and (4) the amount of the expert fee.
We note that, at the outset, plaintiff urges that the trial judge’s factual conclusions should not carry the usual weight of the manifest error rule. Trial on the merits was held in March, 1976, before Judge Stuart S. Kay, who died before rendering a decision. His successor, Judge Ted R. Broyles, ordered the preparation of a written transcript and rendered a decision from the record on September 6,1977. The cases of Allstate Insurance Company v. Shemwell, 142 So.2d 866 (La.App. 2nd Cir. 1962), and Moore v. Travelers Indemnity Company, 352 So.2d 270 (La.App. 2nd Cir. 1977), flatly hold that, in such a situation, the well established rule of according great weight to the factual conclusions of the trial judge is not applicable. This Court in Smith v. West Calcasieu-Cameron Hospital, 251 So.2d 810 (La.App. 3rd Cir. 1971) recognized that it was free to assign less weight than usual to the trial court’s finding of fact *889 concerning the credibility of witnesses in a similar situation. We have doubts that these appellate court decisions are correct because of the languagé of the Louisiana Supreme Court in the case of Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974). Although the Gradney case had to do with depositions, the rationale therein may very well apply to a situation such as we have here. In Gradney, a workmen’s compensation case, a pertinent question involved whether or not the plaintiff’s disability was causally connected with the accident. There was conflicting medical testimony in that regard, and the Supreme Court stated that on the question of causation, the finding of the trial judge must be given great weight. They further said that this was true despite the circumstance that the testimony of all physicians except one was received by deposition. A reasonable analogy exists between deposition testimony, wherein the trial judge has no opportunity to hear or observe the witnesses and the circumstances of the instant case, wherein the judge who decided the case was not the judge who heard the case.
Be that as it may, we feel that it is not necessary to specifically apply the rationale of the Gradney case herein, inasmuch as our review of the record, as hereinafter shown, leads us to agree with the results reached by the district judge who decided the case, except in one particular, specifically, the value allocated to the improvements.
Two qualified appraisers testified in the trial of this case. Mr. Perry E. Futrell, Jr., was called by the Department, and Mr. T. J. Stephens testified on behalf of the owners.
VALUE OF LAND TAKEN
The property was expropriated November 18, 1974, as part of an improvement program for the widening of La. 171 near the City of Leesville. Before the taking, the tract of land consisted of 1.912 acres fronting on La. 171 approximately one-half mile north of the city limits of the City of Leesville in the Parish of Vernon. Situated on the land was a two-story masonry and frame building used partially as a residence. It had two apartments on the upper floor and five garages and an office on the bottom floor. The area was enclosed by a four foot chain link fénee. Other improvements on the property were a barn south of the building, a dog house and yard, chicken coop, birdhouse, blacktop parking areas, and a gravel driveway.
The area taken contained 1.060 acres fronting 411.11 feet along Highway 171, with a south depth of 117.44 feet, rear width of 415.23 feet, and north depth of 128.03 feet.
There was a wide disparity between the two appraisers as to the value of the land taken. Mr. Stephens set the value at $24,-721.00, and Mr. Futrell’s value was $7,560.00. Both appraisers used the market data approach to establish value. The difference in their values arises from the fact that Mr. Stephens classified the property as commercial and Mr. Futrell classified it as residential.
Mr. Stephens placed emphasis on the fact that along Highway 171 in the City of Leesville and to the south of Leesville, the property along the highway was commerr cial. He further felt that the property north of the city along the highway also should be classified as commercial, pointing out that in the vicinity of the subject property are located the State Police Headquarters, Chamber of Commerce building, and a cemetery. Close by is a municipal golf course, and a little distance away there is a sawmill-lumber company. He also stated that property for sale along the highway north of the City of Leesville was difficult to find because the owners did not wish to sell. Based on a commercial trend inside the City of Leesville and extending southward toward Fort Polk, he concluded that the subject property north of the City of Leesville must also be classified as commercial.
The comparables principally relied upon by Mr. Stephens were located near the center and south of the City of Leesville. These he adjusted accordingly. These properties reflected a commercial depth of 150 feet and after adjustments he concluded *890 that the subject property had a value of $80.00 per front foot by a depth of 150 feet. Through this process, Mr. Stephens concluded that the 1.06 acres taken was valued at $24,721.00.
Mr. Futrell testified that he considered the highest and best use of the property to be residential, notwithstanding the fact that, in the immediate area on the same highway, there was situated a police headquarters, Chamber of Commerce building, and a cemetery.
Although we find that the area involved is just north of the city limits of Leesville and that there are several residences in the area, nevertheless, we feel that there is justification in classifying the property taken as commercial. Considering the general area we feel that Mr. Stephens’ conclusions are applicable. We conclude that the preponderance indicates that the highest and best use of the property expropriated is commercial. Therefore we affirm the trial court award of $24,721.00 for the land taken.
VALUE OF IMPROVEMENTS
The next assignment of error concerns the award of $34,300.00 for the improvements taken.
It appears that the main building on the property taken is neither fully residential nor fully commercial, but rather a little of both. One apartment is being rented and brings in revenue, and the defendant uses a portion of the building as an office for his business. We feel that the building is such that it is not error to assess it with a compensable value. We must consider, as was stated in State, Department of Highways v. Goldberg, 223 So.2d 174 (La.App. 3rd Cir. 1969), the extent that the improvements enhance the value of the subject property. We feel that the main building herein is an enhancement to the value of the property for some types of commercial purposes. In Goldberg, supra, the trial court awarded $8,850.00 for two houses which were situated on and taken with the land. The Goldberg court reduced that award and arrived at a valuation for the improvements of approximately 72% of the replacement value.
We feel, as was felt in Goldberg, that the record does not substantiate a holding that the building in this case is worth its full replacement value. Mr. Futrell estimated the value of the improvements taken at $34,300.00, and Mr. Stephens estimated the improvements at $34,940.00. We have reviewed the analysis of both appraisers concerning the improvements and conclude that the $34,300.00 value is proper. Based generally on the formula expressed in Goldberg, supra, we fix the value of the improvements at $24,696.00.
SEVERANCE DAMAGES
The appellant disputes the amount of severance damages awarded by the trial court as the third assignment of error. The remaining tract of land after the taking constituted 0.852 acres based on the survey plat introduced by plaintiff into evidence. The tract had 415.23 feet of frontage on Highway 171. The remaining tract will be triangular in shape with a north depth of 17.41 feet, a south depth of 195.19 feet, and a rear width of 363.31 feet. Due to the size and shape of the remainder, both experts were of the opinion that the land had been damaged. Mr. Stephens valued the severance damages at $9,124.00. Mr. Futrell indicated severance damages in the amount of $6,354.00. The major difference in the amount of damages results from the difference in the values given the property before the taking.
Having reached the conclusion that Mr. Stephens’ valuation of the subject property was more proper than Mr. Futrell’s we adopt the former’s assessment of the severance damages and affirm that award in the amount of $9,124.00.
EXPERT FEES
Plaintiff’s last assignment of error urges that the trial court erred in fixing the fee of the defendants’ expert at $1,181.50, the exact amount reflected in his statement of services. Plaintiff argues that the trial *891 judge used the bill for services as the major, if not the sole, criterion for setting the expert fee. We do not agree. The trial judge in his written reasons felt that the amount reflected in Stephens’ statement was fair considering the time required in inspecting the premises, researching comparable sales, as well as the skill and training required.
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witnesses retained by the landowner to help him obtain his just compensation. State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969), writ refused 254 La. 14, 222 So.2d 67 (1969).
The record reveals that Mr. Stephens prepared a written appraisal detailing his valuations and comparable sales used in reaching these valuations. He also submitted an addendum to his original report containing three more comparable sales. Mr. Stephens testified at the trial of this matter. His statement also reflects considerable time spent in preparing his written appraisal. We affirm the award for the expert fee since the fee is reasonable and in line with awards made by this court in similar cases. E. g., State of Louisiana, Through the Department of Highways v. Gormley, 357 So.2d 859 (La.App. 3rd Cir. 1978).
For the above reasons, the judgment of the District Court is amended so as to reduce the award to defendants from $69,-326.50 to $59,722.50, and as amended, the judgment is affirmed.
Appellate costs are assessed one-fourth to defendants-appellees and three-fourths to plaintiff-appellant. The costs assessed to the plaintiff-appellant are to be limited as provided for in La.R.S. 13:4521.

AMENDED AND AFFIRMED.

WATSON, J., concurs and is of the opinion that the manifest error rule is applicable.
CUTRER, J., dissents and assigns written reasons.
CULPEPPER, J., dissents for the reasons assigned by CUTRER, J.

. This suit sought expropriation of property owned by the community of acquets existing between Burnis N. Mclnnis and Eleanor Martin Mclnnis. Mrs. Mclnnis died during the pend-ency of this matter. Her husband, as surviving spouse in the community, and a major child were substituted as parties-defendant in this case.